```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TIFFANY NORWOOD, JOSEPH HILL,
```

                                Plaintiffs                            **DOCKET NO: CV-25-30**

                      -*against*-

                                                                 **COMPLAINT**

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, P.O. JOEL DIAZ (in his individual
and official capacity), P.O. WILLIAM SCHRODER
(in his individual and official capacity), DET. THOMAS
REO (in his individual and official capacity), SGT.
DERRICK MILLIGAN (in his individual and official
capacity), P.O. JOSHUA SAILOR (in his individual and
official capacity), PO CAITLIN HIGGINS (in her individual
and official capacity), SGT. BRYAN CULLEN (in his
individual and official capacity), P.O. DANIEL HEALY
(in his individual and official capacity), P.O. MICHELLE
GUPTON (in her individual and official capacity), DET.
NICHOLAS CONTE (in his individual and official
capacity), SGT. CHRISTOPHE ESPOSITO (in his
individual and official capacity), P.O. STEVEN HEARNS
(in his individual and official capacity), DET. MICHAEL
CHRISTIANO (in his individual and official capacity),
CPT. PAUL MUGGEO (in his individual and official
capacity), P.O. JOSEPH ANGELONE (in his individual
and official capacity), P.O. CATHERINE DAILEY (in her
individual and official capacity), P.O. NICHOLAS BARONE
(in his individual and official capacity),,"JANE AND JOHN
DOES 1-10" (in their individual and official capacities)

                                Defendants

----------------------------------------------------------------X     ***JURY TRIAL DEMANDED***

        Plaintiffs, **TIFFANY NORWOOD AND JOSEPH HILL**, by and through their attorneys, The Law Offices of Frederick K. Brewington, as and for their Complaint against Defendants, respectfully sets forth and alleges upon information and belief, as follows:

# PRELIMINARY STATEMENT

1. This is a civil action for monetary relief, compensatory damages, special damages and punitive damages, disbursements, costs and fees brought under 42 U.S.C. § 1983, providing relief from the above-captioned Defendants' unlawful malicious prosecution against Plaintiffs, committed under color of law and depriving Plaintiffs of rights secured by the Constitution, the laws of the United States and the State of New York.

2. Plaintiffs allege that Defendants (collectively and individually) negligently, wantonly, recklessly, willfully, carelessly, callously, intentionally, and/ or knowingly sought to and did engage in unlawful conduct, including malicious prosecution that resulted the violation of Plaintiffs' civil rights in that they suffered monetary harm, emotional harm, loss of employment, loss of earnings, psychological damage, humiliation, and damage to name and reputation impairment of earning power, legal fees and costs, and other monetary damages and other injuries not yet fully ascertained. All acts were committed under the color of law and deprived Plaintiffs of rights secured by the Constitution and laws of the United States and the State of New York.

3. Specifically, Plaintiffs allege that Defendants, collectively and individually, negligently, wantonly, recklessly, willfully, carelessly, callously, intentionally, and/ or knowingly sought to and did deprive Plaintiffs of various Constitutional rights, pursuant to the above mentioned federal statutes and causes of action by committing acts under color of law and depriving the Plaintiffs of rights secured by the Constitution and law of the State of New York, which includes malicious prosecution in violation of 42 U.S.C. §1983 and related state law claims as set forth below.

4. Plaintiffs further allege that Defendants were negligent in training, hiring and supervising the officers, thus leading to unlawful conduct, including malicious prosecution that resulted in the violation of Plaintiffs' civil rights in that they suffered monetary harm, emotional harm, loss of employment, loss of earnings, psychological damage, humiliation, and damage to name and reputation impairment of earning power, legal fees and costs, and other monetary damages and other injuries not yet fully ascertained.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1983.

6. As the Eastern District is the District wherein a substantial part of the events giving rise to the instant claim occurred, venue is proper pursuant to 28 U.S.C. § 1391(a)(2).

## PARTIES

7. During all times mentioned in this complaint, Plaintiff Tiffany Norwood and Plaintiff Joseph Hill (hereinafter "Plaintiffs" or individually, "Ms. Norwood," and/or "Mr. Hill") was and still are citizens of the United States, residing in the County of Queens and State of New York.

8. The Defendant City of New York (hereinafter "City") is a duly constituted municipal corporation of the State of New York and is and was the employer of the named police personnel.

9. The Defendant New York County Police Department (hereinafter "NYPD") was and is an agency of the City.

10. During all times stated herein, Defendant Police Officer Joel Diaz (hereinafter "Defendant Diaz") was, a police officer in the NYPD, employed by the City and NYPD, and acting

3

in his official and individual capacity and under the direction of Defendants City and NYPD.

11. During all times stated herein, Defendant Police Officer William Schroder (hereinafter "Defendant Schroder") was, a police officer in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

12. During all times stated herein, Defendant Detective Thomas Reo (hereinafter "Defendant Reo") was, a detective in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

13. During all times stated herein, Defendant Sergeant Derrick Milligan (hereinafter "Defendant Milligan") was, a sergeant in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

14. During all times stated herein, Defendant Police Officer Joshua Sailor (hereinafter "Defendant Sailor") was, a police officer in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

15. During all times stated herein, Defendant Sergeant Bryan Cullen (hereinafter "Defendant Cullen") was, a sergeant in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

16. During all times stated herein, Defendant Police Officer Daniel Healy (hereinafter "Defendant Healy") was, a police officer in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

17. During all times stated herein, Defendant Police Officer Michelle Gupton (hereinafter "Defendant Gupton") was, a police officer in the NYPD, employed by the City and NYPD, and

acting in her official and individual capacity and under the direction of Defendants City and NYPD.

18. During all times stated herein, Defendant Detective Nicholas Conte (hereinafter "Defendant Conte") was, a detective in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

19. During all times stated herein, Defendant Sergeant Christophe Esposito (hereinafter "Defendant Esposito") was, a Sergeant in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

20. During all times stated herein, Defendant Police Officer Steven Hearns (hereinafter "Defendant Hearns") was, a detective in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

21. During all times stated herein, Defendant Police Officer Caitlin Higgins (hereinafter "Defendant Higgins ") was a police officer in the NYPD, employed by the City and NYPD, and acting in her official and individual capacity and under the direction of Defendants City and NYPD.

22. During all times stated herein, Defendant Detective Michael Christiano (hereinafter "Defendant Christiano") was, a detective in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

23. During all times stated herein, Defendant Captain Paul Muggeo (hereinafter "Defendant Muggeo") was, a captain in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

24. During all times stated herein, Defendant Police Officer Joseph Angelone (hereinafter "Defendant Angelone") was, a police officer in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

25. During all times stated herein, Defendant Police Officer Catherine Dailey (hereinafter "Defendant Dailey") was, a police officer in the NYPD, employed by the City and NYPD, and acting in her official and individual capacity and under the direction of Defendants City and NYPD.

26. During all times stated herein, Defendant Police Officer Nicholas Barone (hereinafter "Defendant Barone") was, a police officer in the NYPD, employed by the City and NYPD, and acting in his official and individual capacity and under the direction of Defendants City and NYPD.

27. During all times stated herein, Defendants Jane and John Does 1-10 (hereinafter "Does 1-10"), all of whom names are known to the City and NYPD, were, employed by the City and NYPD, and acting in their official and individual capacities and under the direction of Defendants City and NYPD and are sued herein individually and in their official capacities.

## **FACTUAL ALLEGATIONS**

28. The initial incident took place on or about August 11, 2020 at approximately 9:00 a.m. at 172-21 Amelia Road, Jamaica, County of Queens in the State of New York, 11434. Prior to that time, Mr. Hill drove his fiancé, Ms. Norwood, to work, located at 611 Northern Boulevard. Following that, Mr. Hill drove to the residence of Victor and Debra Norwood, the parents of Ms. Norwood, at 172-21 Amelia Road, Queens, New York 11431 to check on Victor Norwood due to his various health issues. Upon arrival to the residence, Mr. Hill saw a SWAT team and police at the residence. Mr. Hill called Ms. Norwood and explained what he saw. Ms. Norwood told Mr. Hill to come back to her job and get her. Mr. Hill left immediately.

29. Simultaneously, Ms. Norwood received a phone call from a neighbor advising her that her father, Victor Norwood, was being taken from the house at 172-21Amelia Road to Long Island Jewish hospital located at 270-05 76th Avenue New Hyde, NY 11040. Mr. Hill picked up Ms.

Norwood and both Plaintiffs went straight to Long Island Jewish hospital. Upon discharge from the hospital, four to five hours later, Plaintiffs took Mr. Norwood back to his residence.

30. When Plaintiffs and Mr. Norwood arrived back at his residence, the SWAT team and police were no longer there. Unbeknownst to Plaintiffs, Defendants Police Officer William Schroder, Detective Thomas Reo, and Police Officer Joshua Sailor had executed a search warrant on the residence of Debra and Victor Norwood and their son, Victor T. Norwood, who were all inside of the residence at the time.

31. The following items were allegedly seized from the police search of the residence located at 172-21 Amelia Road, under the executed search warrant:

- Police Officer William Schroder recovered one (1) loose .45 caliber round, one (1) black bb gun and twenty (20) loose .9 millimeter rounds next to a bed in a bedroom on the second floor. In the same bedroom, (1) .9 millimeter pistol with thirteen (13) rounds inside said pistol's magazine, one (1) .380 pistol with five (5) rounds inside said pistol magazine and one (1) round inside said pistol's chamber one (1) loose .9 millimeter round and a clear twist containing a quantity of alleged cocaine under a mattress;

- Police Officer William Schroder also recovered (1) loose .32 caliber round, one (1) .9 loose caliber round, two marijuana grinder with marijuana residue and one (1) scale containing marijuana residue on top of a dresser inside a second bedroom on the second floor;

- Detective Thomas Reo recovered mail from on top of a dresser inside of second bedroom on the second floor which was addressed to Plaintiff;

- Police Officer Joshua Sailor recovered a New York State Identification card bearing Plaintiff's name inside the second bedroom on the second floor.

32. Plaintiffs spoke with Debra Norwood, who told Plaintiffs that the police searched the house and allegedly found: firearms and drugs in a shoe box in a bedroom that Plaintiffs had not occupied for two (2) months and that Plaintiff Norwood's brother, Victor T. Norwood, was arrested.

33. The next day Plaintiffs received a call from Ms. Norwood's parents, who told them

that two police officers were looking for Ms. Norwood and that they (the two police officers) did not want to come to her job and "embarrass her."

34. Plaintiffs were confused as to the inquiring about Plaintiff Ms. Norwood by police, as she had not lived in her parents house nor occupied the house for more than two months, so on August 20, 2020, Mr. Hill went to the 113th precinct to look into this matter.

35. Mr. Hill, who had committed no crime, arrived to the 113th precinct, taken into custody and arrested by Police Officer Diaz, and charged with the felony of Penal Law §265.03 Criminal Possession of a Weapon in the Second Degree and 220.03 Criminal Possession of a Controlled Substance in the Seventh Degree. After being in custody and jailed for over 12 hours, he was released on $30,000 bail.

36. On April 28 2021, Plaintiff Hill was offered a new higher paying job at New York City Housing Authority (NYCHA), which was to start on May 6th 2021. On May 4, 2021, Plaintiff Mr. Hill received a letter from NYCHA, that informed him that NYCHA was unable to extend an offer of employment. This occurred as a result of the wrongful prosecution against Mr. Hill.

37. Ms. Norwood, in a state of disbelief and confusion about charges now placed on her fiance, was then instructed by detectives to come into the 113th Precinct and surrender because police alleged that mail in her name was found at her parents' residence.

38. On September 10, 2020, Ms. Norwood, who had never had any contact with the criminal justice system, peacefully surrendered herself to the 113th precinct, was taken into custody and arrested by Police Officer Daniel Healy. Ms. Norwood was charged with the felony of Penal Law §265.03 Criminal Possession of a Weapon in the Second Degree and 220.03 Criminal Possession of a Controlled Substance in the Seventh Degree. Ms. Norwood was jailed overnight and

released the next day on $10,000 Bond.

39. The next day, September 11, 2020, Ms. Norwood was promptly terminated from her job as a Medical Assistant with Northwell Health due to the pending felony charges.

40. In November of 2021, Plaintiffs were advised that Victor T. Norwood, the alleged target of the warrant and who has been arrested and had his case dismissed. Plaintiffs were hopeful that their cases would be dismissed as well. However, on November 10, 2021, Plaintiffs found out that their case was brought before the grand jury, and they were indicted.

41. Upon information and belief, the indictment was based on false and fabricated charges.

42. Both Plaintiffs had to hire private counsel and attend numerous court dates throughout 2020 and 2021.

43. Plaintiffs were both subjected to malicious prosecution for a duration of over two years that entailed, prosecutors making false claims regarding DNA evidence, failure to calendar Plaintiffs' cases for trial, and prosecutors attempts to fabricate additional charges against Plaintiffs.

44. One of the Prosecutors informed the court that Ms. Norwood's DNA was found on the firearms that were confiscated from premise 172-21 Amelia Road.

45. In November of 2022, prosecutors continued to offer Plaintiffs ridiculous plea deals that included penalties from 3 years in jail, to 3 years probation, to disorderly conduct, and then an adjournment in contemplation of dismissal.

46. In the midst of Plaintiffs being subjected to malicious prosecution, emotional distress and mental anguish of going through the litigation process, Plaintiff Ms. Norwood on November

14, 2021, suffered a stroke and went to Long Island Jewish Hospital, which resulted in her being hospitalized and she underwent a procedure to have a loop recorder placed in her chest.

47. Additionally, Ms. Norwood suffered some mouth paralysis making it hard for her to talk. Since the stroke, Ms. Norwood and Mr. Hill have been trying to have a baby however, Ms. Norwood has been unable to conceive due to the emotional stress and pressure created by the arrest and malicious prosecution.

48. More than two years after arrest, on December 1, 2022, Plaintiffs' cases were dismissed pursuant to CPL 210.20(1)(i) and 160.50. Plaintiffs were notified of the dismissal of both their cases on December 7th, 2022.

49. On August 20, 2020, Plaintiff Mr. Hill was the subject of false and harmful accusation and has been denied his liberty, constitutional right of due process and equal protection as well as others, which continued until December 1, 2022.

50. On September 10, 2020 Plaintiff Ms. Norwood was the subject of false and harmful accusation and has been denied her liberty, constitutional right of due process and equal protection as well as others, which continued until December 1, 2022.

51. The false accusation and over zealous actions of Defendants Police Officers which led to the false arrest, wrongful detainment, malicious prosecution and other wrongful acts conducted against Plaintiffs by Defendants, including but not limited to all Police Officers Defendants, constituted abuse of authority, violation of law, violation of police procedures, was lacking in probable cause and calculated to scare, harm and damage Plaintiffs.

52. Such actions of Defendants were negligent, reckless, unreasonable and unauthorized as defendants had a duty to save Plaintiff from the malicious prosecution but, failed to prevent same

and breached their duty and further failed to make reasonable inquiry, failed to conduct a proper investigation and failed to protect Plaintiffs' Civil and Constitutional rights.

**AS AND FOR COUNT ONE**
**42 U.S.C. § 1983**
**MALICIOUS PROSECUTION**

53. The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint with the same force and effect as though fully set forth herein.

54. Defendants lacked reasonable cause to harass, menace and/or otherwise subject Plaintiffs to malicious prosecution.

55. Defendants, separately and in concert, lacked reasonable suspicion and/or probable cause to detain Plaintiffs, and further lacked reasonable and/or probable cause to arrest or charge them and subject him to prolonged criminal proceedings. Plaintiffs were subjected to over two years of malicious prosecution, beginning with wrongful charges being lodged against them in August of 2020, and ultimately ending with the dismissal of these wrongful charges in December of 2022.

56. Without such probable cause and/or reasonable suspicion, Defendants wrongfully arrested, charged, detained, prosecuted, and subjected Plaintiffs to prolonged malicious prosecution between August of 2020 and December of 2022.

57. During the over-two-year period in which Defendants viciously subjected Plaintiffs to malicious prosecution, Plaintiffs, by direct cause of Defendants, were plagued by a series of disastrous tragedies, caused by the prosecution, including, but not limited to, workplace termination, recision of employment opportunities and offers, extreme loss of income, enhanced symptomatic suffering, exacerbated health conditions, acute emotional distress, fixed, melancholic dispositions, degraded existence, decreased life-satisfaction, loss of familial honor, erosion of familial respect,

criminal record, financial impairment, degradation of social standing, loss of public respect, ultimate humiliation, intense harassment, loss of liberty, corroded self-esteem, corroded self-respect, and the infringement of their rights guaranteed to them under the U.S. Constitution, among an abundance of other catastrophic setbacks not fully articulated herein.

58. Ms. Norwood, a delicate and vulnerable Plaintiff, experienced a cluster of medical emergencies as a result of Defendants' nefarious, wrongful, and malicious prosecution, including strokes and complications to conceive a child.

59. Mr. Hill, the loving fiancé of Ms. Norwood and a Plaintiff in this Complaint, experienced, in addition to the direct damage caused by Defendants, secondhand suffering throughout the critical periods in which Ms. Norwood languished as a result of the strokes she suffered, caused by Defendants.

60. The continued action taken by Defendants to prosecute, harass and fully inconvenience Plaintiffs with false criminal charges was malicious, in that Defendants used the courts and judicial process to harass, intimidate, inconvenience, impair, and further damage Plaintiffs, despite no significant evidence for prosecuting the baseless charges of PL 265.03(1)(b) criminal possession of a weapon in the second degree: loaded firearm, with a maximum sentence of fifteen (15) years; and PL 220.03 criminal possession of a controlled substance in the seventh degree, with a maximum sentence of one (1) year in jail. All of these charges, together, total a sixteen-year (16) maximum sentence: enough to ransack Plaintiffs of their middle adulthood and their chances of carrying a fetus to term.

61. Each of the Defendants willfully engaged in the pressing of and pursuit of the false charges against Plaintiff and did so knowing that Plaintiff had committed no crime and was not

involved in the incident for which they were charging him.

62. Each of the Defendants knew that Plaintiffs had not engaged in any unlawful or criminal activity. Each of the Defendants initiated and continued the criminal charges and proceedings against Plaintiffs with no consideration for the harm they were actually causing.

63. Upon information and belief, Defendants took an active role in creating and manufacturing the allegations made against Plaintiffs for the improper purpose including but not limited to personal gain, selfish purposes and/or to mask and coverup their wrongful actions and abuses of Plaintiffs. Defendants abused the Legal system and process for their own benefit and self interest.

64. With the complicity of the individual Defendants, Defendants maliciously prosecuted Plaintiffs using fabricated evidence. As demonstrated by Defendants' statement of "I figured they would have caught a case by now," it is clear that Defendants haphazardly mauled Plaintiffs' right to be free from malicious prosecution by acting with malice and a reckless disregard for the truth when they, Defendants, stalled the wrongful criminal process against Plaintiffs under belief that, by some unascertained chance, Plaintiffs would avail themselves to criminality. Defendants sought and failed to pin the charges on Plaintiffs, dragging Plaintiffs through criminal processes for over two years and caused injury to Plaintiffs and their lives.

65. The malicious prosecution and other wrongful acts conducted against Plaintiffs by Defendants constituted violations of Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights. Defendants' negligent, reckless, careless, callous, knowing, willful, wanton, intentional, and purposeful behavior, breached their duty under 42 U.S.C. §1983.

66. As a direct and proximate result of the aforesaid acts of collective Defendants,

Plaintiffs suffered great physical harm, mental anguish, loss of earning power, loss of employment, lost wages, incurred attorney fees, additional monetary harms, and violation of rights, as a result of the foregoing acts of the Defendants.

67. That by reason of the foregoing, Plaintiff has been damaged in the excess of Five Million ($5,000,000) Dollars, including attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against the individual Defendants.

**AS AND FOR COUNT TWO**
**42 U.S.C. § 1983**
**FABRICATION OF EVIDENCE**

68. Plaintiffs repeat, reiterate, and reallege the allegations set forth in paragraphs 1 through 67 of this Complaint with the same force and effect as though fully set forth herein.

69. Upon information and belief, Defendants took an active role in creating and manufacturing the allegations made against Plaintiffs in an intentional attempt to mask and coverup their wrongful actions and abuses of Plaintiffs. Defendants abused the Legal system and process for their own benefit and self interest. With the complicity of the individual Defendants, Defendants maliciously prosecuted Plaintiffs using fabricated evidence. As demonstrated by Defendants' statement of "I figured they would have caught a case by now," it is clear that Defendants haphazardly mauled Plaintiffs' right to be free from malicious prosecution by acting with malice and a reckless disregard for the truth when they, Defendants, stalled the wrongful criminal process against Plaintiffs under belief that, by some unascertained chance, Plaintiffs would avail themselves to criminality. Defendants sought and failed to pin the charges on Plaintiffs, dragging Plaintiffs through criminal processes for over two years and caused injuries to Plaintiffs and their lives.

70. Defendants knew at the time of Plaintiffs' individual arrests, and at all times since then, that they were not in possession of any evidence consistent with and sufficient to establish their

guilt and were based solely, or in part, on Defendants' disregard and discriminatory and violative actions due in part or in whole to deprive Plaintiffs of their right to freedom from malicious prosecution as a result of fabricated evidence furnished by Defendants.

71. Each of the Defendants acting under color of law, acted separately and in concert and without authorization of law. Each of the Defendants, separately and in concert with each other, acted negligently, recklessly, carelessly, callously, knowingly, willfully, wantonly, intentionally, and purposefully with specific intent to deprive Plaintiffs of their right to freedom from malicious prosecution as a result of fabricated evidence furnished by Defendants. All of these rights are secured to Plaintiffs by the provisions of the due process clause of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States, and by 42 U.S.C. § 1983.

72. That by reason of the foregoing, Plaintiffs has been damaged in excess of Five Million ($5,000,000.00) dollars, including attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against the individual Defendants.

**PRAYER OF RELIEF**

**WHEREFORE**, PLAINTIFFS demands judgment against DEFENDANTS:

- a. On the First Count of Action in excess of five million ($5,000,000.00) dollars.
- b. On the Second Count of Action in excess of Five Million ($5,000,000.00) dollars.
- c. Punitive damages in the amount of twenty million ($20,000,000.00) dollars.
- d. Injunctive relief, requiring Defendants to correct all past violations of federal law as alleged herein; to enjoin Defendants from continuing to violate federal law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal laws;

e. An order granting such other legal and equitable relief as the court deems just and proper.

f. Award costs of this action including attorney's fees to the PLAINTIFF pursuant to 42 U.S.C. § 1988 and any and all applicable attorney's fees and costs as imposed by state-law.

**A JURY TRIAL IS DEMANDED**

Dated: Hempstead, New York
January 2, 2025

Respectfully,
LAW OFFICES OF
FREDERICK K. BREWINGTON

By: */s/ Frederick K. Brewington*
FREDERICK K. BREWINGTON
Attorney for Plaintiff
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959